IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

UNITED STATES OF AMERICA     §
    §
V.     §    NO. 6:16CR _39_   Clark/Mitchell
    §
SALEEM JAFFER JIWANI (01)     §
  a.k.a. "Sam"     §    **SEALED**
ADEEL UZ ZAMAN KHAN (02)     §
  a.k.a. "Adam"     §
NADIA FARISHTA (03)     §
SHARJEEL JEFF ALI (04)     §
NIMROSE KHAN (05)     §

FILED
AUG 3 - 2016
Clerk, U.S. District Court
Texas Eastern

<u>INDICTMENT</u>

THE UNITED STATES GRAND JURY CHARGES:

<u>INTRODUCTION</u>

1. At all times relevant to this Indictment, Defendants **Saleem Jaffer Jiwani,**

   **Adeel Uz Zaman Khan, Nadia Farishta, Sharjeel Jeff Ali,** and **Nimrose**

   **Khan;** hereinafter sometimes collectively referred to as the "**Jiwani Family**,"

   and/or their corporate entities were the owners, operators, managers, and/or

   employees of retail stores as follows:

   Minute Stop/Valero Gas Station, hereinafter referred to as "Minute Stop,"
   located at 11874 Highway 64 West, Tyler, Smith County, Texas; and

   Ashes Smokes and Tattoos, hereinafter referred to as "Ashes," located at 1428
   Avenue K, Plano, Collin County, Texas.

2. Defendants are related, and it is believed that the following relationships exist:

- **Saleem Jaffer Jiwani (Saleem Jiwani)** resides in Tyler and has been employed at the Minute Stop since about December 2011.

- **Adeel Uz Zaman Khan (Adeel Khan)** is **Saleem Jiwani's** son-in-law and is married to **Saleem Jiwani's** daughter, **Nimrose Khan**. **Adeel Khan** and **Nimrose Khan** reside together in Carrolton, Dallas County, Texas. Both have worked at Ashes.

- **Sharjeel Jeff Ali (Sharjeel Ali)** is **Saleem Jiwani's** son. **Nadia Farishta** is **Saleem Jiwani's** ex-wife, and the mother of **Nimrose Khan** and **Sharjeel Ali**. **Nadia Farishta** and **Sharjeel Ali** reside together in Dallas, Denton, County Texas. **Sharjeel Ali** has worked at Ashes.

3. The Defendants, through the Minute Stop and Ashes, ostensibly sold synthetic substances including synthetic cannabinoids and synthetic cathinones, also known as designer drugs, some of which are also known as "K2" or "Spice," to the public in packages labeled "incense," "potpourri," or a variety of other similarly named products (hereinafter collectively referred to as "synthetic drugs.") However, these products contained synthetic chemicals which were intended to mimic the effects of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana. The variety of products sold by the Defendants contained a variety of synthetic cannabinoid and synthetic cathinone compounds. Some of the compounds contained Schedule I controlled substances, while others contained controlled substance analogues. The Defendants also sold products which contained Delt-9-Tetrahydrocannabinal (THC), a Schedule I controlled substance.

4. The Minute Stop is a Valero gas station and convenience store where **Saleem Jiwani** is employed. At this store, **Jiwani** and various employees sold synthetic drugs as well as illegal drug paraphernalia, including smoking pipes. Some cash payments for these products were placed into an envelope which was kept under the counter.

5. SNK Vapor Inc. (SNK Vapor), incorporated in April 2013, does business as, and shares the same address as Ashes. Some of the initial deposits into this corporation came from **Nadia Farishta** and **Saleem Jiwani**. **Nadia Farishta** is the President, Director, and Registered Agent for SNK Vapor, and **Saleem Jiwani** is its Vice President. **Nadia Farishta** and **Saleem Jiwani** listed various residential addresses in Mesquite and Dallas, Texas, as their corporate officer addresses. Additionally, according to Texas Workforce Commission (TWC) records, **Saleem Jiwani**, **Nadia Farishta**, and **Adeel Khan**, are employees of SNK Vapor/Ashes, and **Nimrose Khan** was an employee during 2014. **Sharjeel Ali** has also worked at Ashes during 2016. These individuals are involved in the day to day operations of Ashes. Two known bank accounts for SNK Vapor originally had the same address as Ashes but these addresses were changed in 2015 to the **Farishta/Ali residence** and the **Khan residence**. At various times, all Defendants have been listed as signers on various SNK Vapor bank accounts.

6. Ashes sold synthetic drugs, and offered illegal drug paraphernalia, vaping products, cigarettes, and a limited quantity of food items for sale. A tattoo parlor was also located within this store. Payments for synthetic drugs at this store were run through the store's cash register.

7. The **Jiwani Family** employed other individuals, to work at Ashes for the purpose of selling synthetic drugs and other products. The employees acted under the direction of **Jiwani Family** members. **Saleem Jiwani** also directed employees at the Minute Stop regarding the sale of synthetic drugs. The **Jiwani Family** members were aided and abetted by one another and by their employees in the illegal sale and distribution of synthetic drugs and drug paraphernalia.

8. The Defendants and others sold Schedule I controlled substances and controlled substance analogues that were intended for human consumption at the Minute Stop and Ashes.

9. As of March 1, 2011, AM-2201 is a controlled substance analogue. As of July 9, 2012, AM-2201 is a Schedule I controlled substance.

10. As of March 1, 2011, XLR-11 is a controlled substance analogue. As of May 16, 2013, XLR-11 is a Schedule I controlled substance.

11. As of March 1, 2011, PB-22 and 5F-PB-22 are controlled substance analogues. As of February 10, 2014, PB-22 and 5F-PB-22 are Schedule I controlled substances.

12. As of March 1, 2011, MAM-2201 is a controlled substance analogue.

13. As of May 16, 2013, 5F-AKB48 (5F-APINACA) is a controlled substance analogue.

14. As of February 10, 2014, AB-FUBINACA is a Schedule I controlled substance.

15. As of February 10, 2014, 5F-ABICA, 5F-AB-PINACA, 5F-ADB (5F-MDMB-PINACA), 5F-AMB, ADB-CHMINACA (MAB-CHMINACA), FUB-PB-22, and NM-2201 are controlled substance analogues.

16. As of February 10, 2014, AB-CHMINACA and AB-PINACA are controlled substance analogues. As of January 30, 2015, AB-CHMINACA and AB-PINACA are Schedule I controlled substances.

17. Synthetic drugs were kept hidden under the counter at the Minute Stop and Ashes, and were sold to customers by employees, **Saleem Jiwani**, **Adeel Khan**, and **Sharjeel Ali**. The price of various sized packages ranged between $10.00 and $50.00.

18. Retail purchases of synthetic substances were primarily made with cash.

19. The Defendants intended the synthetic substances to be smokable products, and therefore intended them to be used to affect the structure or any function of the body (*i.e.,* to be inhaled as a recreational drug to get the user "high").

20. **Nadia Farishta** and **Nimrose Khan** wrote numerous checks from SNK Vapor checking accounts to a Source of Supply (SOS) in California. **Adeel Khan, Sharjeel Ali,** and **Saleem Jiwani** also appear to have signed checks on occasion. Check notations included "inventory," "incense," "Ashes," or "personal." On many occasions, immediately after Ashes received a shipment via Federal Express, a **Jiwani family** member wrote a check and sent a

package via Federal Express. Packages were sent from "**Nadia**" and "**Adam**." Received shipments were addressed to "**Nadia**," "**Adam**," and "**Ed**." The foregoing shipments were received from and sent to the SOS in California.

21. Over $373,000 was paid by SNK Vapor to the SOS in the form of checks and cashier's checks.

## COUNT ONE

> Violation: 21 U.S.C. § 846 (Conspiracy to distribute and possess with intent to distribute Schedule I Controlled Substances)

The Grand Jury incorporates by reference Paragraphs 1-21 of the Introduction as though fully reasserted and re-alleged herein.

Beginning at least by April 2013, the exact date being unknown to the Grand Jury, and continuing thereafter through the date of the return of this Indictment, in Smith County, Texas; and in Collin County, Texas; in the Eastern District of Texas, and elsewhere, **Saleem Jiwani**, **Adeel Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose Khan**, Defendants herein, did knowingly and intentionally combine, conspire, confederate and agree together with each other and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute Schedule I controlled substances, in violation of the laws of the United States, to wit, 21 U.S.C. § 841(a)(1) prohibiting the distribution of Schedule I controlled substances.

## COUNT ONE OVERT ACTS

The following occurred at the Minute Stop in Smith County, Texas:

1.     On January 8, 2015, an employee sold and distributed products labeled as follows: "Kush," which was a mixture or substance containing detectable amounts of **AB-Fubinaca** and **PB-22**, Schedule I controlled substances; and "Mr. Sinn," which was a mixture or substance containing a detectable amount of **AB-Fubinaca**, a Schedule I controlled substance, to an undercover officer.

2.     On April 15, 2015, an employee sold and distributed products labeled as follows: "F*cking Crazy," which was a mixture or substance containing a detectable amount of **AB-Pinaca**, a Schedule I controlled substance; "Geeked Up" and "7H," both of which were mixtures or substances containing detectable amounts of **XLR-11**, a Schedule I controlled substance; and "Alice in Wonderland," which was a mixture or substance containing a detectable amount of **PB-22**, a Schedule I controlled substance, to an undercover officer.

3.     On May 19, 2015, **Saleem Jiwani** sold and distributed products labeled as follows: "Geeked Up" and "Kush," both of which were mixtures or substances containing detectable amounts of **XLR11**, a Schedule I controlled substance; "Klassic Klimax," which was a mixture or substance containing detectable amounts of **AB-Fubinaca** and **PB-22**, Schedule I controlled substances; and "Dead Man Walking," which was a mixture or substance containing detectable amounts of **5F-PB-22** and **XLR11**, Schedule I controlled substances, to an undercover officer.

The following occurred at Ashes in Collin County, Texas:

4. On July 8, 2015, **Adeel Khan** sold and distributed products labeled as follows: "Platinum Gorilla King," which was a mixture or substance containing a detectable amount of **AB-Fubinaca**, a Schedule I controlled substance, and "Get Real," which was a mixture or substance containing a detectable amount of **AB-Chminaca**, a Schedule I controlled substance, to an undercover officer.

5. On October 20, 2015, **Adeel Khan** sold and distributed two packages of "Just Chill" CBD oil, a liquid substance designed for use in electronic cigarettes, which was a mixture or substance containing a detectable amount of **5F-ADB,** a controlled substance analogue, and **Delt-9-Tetrahydrocannabinal (THC)**, a Schedule I controlled substance, to an undercover officer.

6. On March 15, 2016, **Sharjeel Ali** sold and distributed two packages of "Just Chill" CBD oil, a liquid substance designed for use in electronic cigarettes, which was a mixture or substance containing a detectable amount of **5F-ADB,** a controlled substance analogue, and **THC**, a Schedule I controlled substance, to an undercover officer.

In violation of 21 U.S.C. § 846.

COUNT TWO

Violation: 21 U.S.C. § 846 (Conspiracy to
distribute and possess with intent to distribute
Controlled Substance Analogues)

The Grand Jury incorporates by reference Paragraphs 1-21 of the Introduction as
though fully reasserted and re-alleged herein.

Beginning at least by April 2013, the exact date being unknown to the Grand Jury,
and continuing thereafter through the date of the return of this Indictment, in Smith
County, Texas; and in Collin County, Texas; in the Eastern District of Texas, and
elsewhere, **Saleem Jiwani**, **Adeel Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose
Khan**, Defendants herein, did knowingly and intentionally combine, conspire,
confederate and agree together with each other and with others known and unknown to
the Grand Jury, to knowingly and intentionally distribute and possess with intent to
distribute controlled substance analogues as defined in 21 U.S.C. § 802(32)(A), knowing
that each was intended for human consumption, as provided in 21 U.S.C. § 813, in
violation of the laws of the United States, to wit, 21 U.S.C. § 802(32)(A), 21 U.S.C. §
813, and 21 U.S.C. § 841(a)(1), prohibiting the distribution of controlled substance
analogues.

COUNT TWO OVERT ACTS

The following occurred at the Minute Stop in Smith County, Texas:

1. On November 14, 2014, an employee sold and distributed a product labeled "Mary Jane," which was a mixture or substance containing a detectable amount of **5F-AMB**, a controlled substance analogue, to an undercover officer.

2. On January 8, 2015, an employee sold and distributed products labeled as follows: "F'd Up," which was a mixture or substance containing a detectable amount of **AB-Pinaca**, a controlled substance analogue; and "MOSVOX," which was a mixture or substance containing a detectable amount of **NM-2201**, a controlled substance analogue, to an undercover officer.

3. On May 19, 2015, **Saleem Jiwani** sold and distributed a product labeled "Dr. Feel Good," which was a mixture or substance containing a detectable amount of **5F-AMB**, a controlled substance analogue, to an undercover officer.

4. On July 14, 2016, an employee sold and distributed two packages of a product labeled "Sin," which was a mixture or substance containing a detectable amount of **5F-MDMA-Pinaca**, a controlled substance analogue, to an undercover officer.

The following occurred at Ashes in Collin County, Texas:

5. On December 9, 2014, an employee sold and distributed a product labeled "F'd Up," which was a mixture or substance containing a detectable amount of **AB-Pinaca**, a controlled substance analogue, to an undercover officer.

6. On April 29, 2015, an employee sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-**

**AMB**, a controlled substance analogue, to an undercover officer. The employee stated that this product was their best seller.

7.   On July 8, 2015, **Adeel Khan** sold and distributed products labeled "Get Real," which was a mixture or substance containing detectable amounts of **5F-AMB, 5F-AKB48**, and **5F-AB-Pinaca**, controlled substance analogues; "Zero Gravity," which was a mixture or substance containing detectable amounts of contained **5F-AMB** and **MAB-CHMINACA**, controlled substance analogues; "Brain Freeze," "Dr. Feel Good," and "Delirium," which were mixtures or substances containing detectable amounts of **5F-AMB**, a controlled substance analogue; "Venom" and "Kisha Cole," which were mixtures or substances containing detectable amounts of **NM-2201**, a controlled substance analogue, to an undercover officer.

8.   On August 27, 2015, **Adeel Khan** sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-AMB**, a controlled substance analogue, to an undercover officer.

9.   On August 31, 2015, **Adeel Khan** sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-AMB**, a controlled substance analogue, to an undercover officer.

10.   On October 20, 2015, **Adeel Khan** sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

11.     On February 23, 2016, an employee sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an individual who died on or about February 24, 2016.

12.     On March 3, 2016, **Sharjeel Ali** sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

13.     March 24 2016, **Sharjeel Ali** sold and distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

14.     On April 7, 2016, **Sharjeel Ali** sold and distributed a product labeled "F*cking Crazy," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

15.     June 16, 2016, an employee sold distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

16.     July 19, 2016, an employee sold distributed a product labeled "Brain Freeze," which was a mixture or substance containing a detectable amount of **5F-ADB**, a controlled substance analogue, to an undercover officer.

In violation of 21 U.S.C. § 846.

<u>COUNT THREE</u>

Violation: 18 U.S.C. § 371 (Conspiracy to
commit offenses against the United States)

The Grand Jury incorporates by reference Paragraphs 1-21 of the Introduction and

the Overt Acts of Counts One and Two as though fully reasserted and re-alleged herein.

1.     The United States Food and Drug Administration (FDA) is the agency of

the United States responsible for, among other things, enforcing the Federal Food, Drug,

and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et seq.* A primary purpose of the FDCA is

to protect the public health by regulating the manufacturing, labeling, and distribution of

drugs shipped or received in interstate commerce.

2.     Under the FDCA, a "drug" was defined as, among other things, articles

(other than food) intended to affect the structure or function of the body of man or other

animals or articles intended for use as components of other drugs.  21 U.S.C. §§

321(g)(1)(C) and (D).

3.     Under the FDCA, the term "label" was defined to include a "display of

written, printed, or graphic matter upon the immediate container of any article." 21

U.S.C. § 321(k).  The term "labeling" was defined as "all labels and other written,

printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2)

accompanying such article."  21 U.S.C. § 321(m).

4.     Under the FDCA, a drug is misbranded if, among other things:

a. its labeling is false or misleading in any particular. *See* 21 U.S.C. §

   352(a); and

b. the drug is in package form and does not bear a label containing the

   name and place of business of the manufacturer, packer, or distributor.

   *See* 21 U.S.C. § 352(b).

5.     The FDCA prohibits doing and causing the following acts: receiving in

interstate commerce a drug that is misbranded and the delivering and proffering delivery

of such drug for pay and otherwise. 21 U.S.C. § 331(c)

6.     Beginning at least by June 2013, the exact date being unknown to the Grand

Jury, and continuing thereafter through the date of the return of this Indictment, in Collin

County, Texas, in the Eastern District of Texas; and elsewhere, **Saleem Jiwani**, **Adeel**

**Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose Khan**, defendants herein, knowingly

and willfully combined, conspired, confederated, and agreed with each other and with

other persons, both known and unknown to the Grand Jury, to commit offenses against

the United States, that is:  with the intent to defraud and mislead, to receive in interstate

commerce drugs within the meaning of 21 U.S.C. §§  321(g) (1) – namely, AM-2201,

XLR-11, PB-22, 5F-PB-22, MAM-2201, 5F-AKB48 (5F-APINACA), AB-FUBINACA,

5F-ABICA, 5F-AB-PINACA, 5F-ADB (5F-MDMB-PINACA), 5F-AMB, ADB-

CHMINACA (MAB-CHMINACA), FUB-PB-22, NM-2201, AB-CHMINACA, and AB-

PINACA – packaged and sold under various brand names, that were misbranded, and to

deliver and proffer the delivery of such drugs for pay and otherwise; in violation of 21 U.S.C. §§ 331(c) and 333(a)(2). These drugs were misbranded in the following ways:

(a) within the meaning of 21 U.S.C. § 352(a), in that their labeling was false or misleading in any particular; and

(b) within the meaning of 21 U.S.C. § 352(b)(1), in that their labeling, in package form, failed to include the name and address of the manufacturer, packer, or distributor.

## OBJECT OF THE CONSPIRACY

The defendants sought to enrich themselves by selling misbranded drugs that concealed the true nature and dangers of the drugs from consumers and the FDA.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, but were not limited to, the following:

1.      The defendants ordered and purchased drugs from a supplier located outside the State of Texas for resale through the Ashes store. The supplier shipped the misbranded drugs to Ashes using Federal Express, and members of the conspiracy, including the Defendants, received those shipments at Ashes.

2.      Members of the conspiracy received, in interstate commerce, and thereafter sold and offered for sale, multiple misbranded drugs including, but not limited to products described or marketed as the following, and variations of the same: "Mary

Jane," "F'd Up," "Kush," "Mosovox," "Mr. Sin," "F*cking Crazy," "Geeked Up," "7H,"

"Alice in Wonderland," "Klassic Klimax," "Dead Man Walking," "Dr. Feel Good," "Get

Real," "Zero Gravity," "Brain Freeze," "Venom," "Kisha Cole," "Platinum Gorilla

King," "Delirium," "Just Chill," and "Sin."

3.    The drugs sold were misbranded in one or more of the following respects:

a.  The labeling of the drugs was false and misleading because it fraudulently
identified the drugs as "incense," "potpourri," or other similar names.

b.  The labeling on the drugs was false and misleading because it failed to
disclose the drugs' controlled substance components.

c.  The labeling on the drugs was false and misleading because it fraudulently
represented that the drugs were not for human consumption.

d.  The drugs were in package form and did not bear labels containing the
name and place of business of the manufacturer, packer, and distributor.

## OVERT ACTS

1.    Between June 14, 2013, and February 6, 2016, SNK Vapor, primarily

through checks signed by **Nadia Farishta** and **Nimrose Khan**, and sometimes by other

Defendants, and also sometimes with cashier's checks, purchased over $373,000 in

inventory from a supplier of synthetic substances. Many of the checks were notated for

"inventory, "personal," "Ashes," or "delivery."

2.    On numerous occasions, from at least August 22, 2013, through at least

July 8, 2016, the Defendants received numerous shipments of misbranded drugs by

ordering the drugs from a supplier located in California for resale at Ashes and the Minute Stop in the Eastern District of Texas. Members of the conspiracy received 66 shipments through Federal Express from the California supplier.

3. After misbranded drugs were received in interstate commerce, the defendants delivered and proffered them for delivery to customers for pay.

In violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(c), 333(a)(2).

## COUNT FOUR

> Violation: 21 U.S.C. § 846 (Conspiracy to Sell
> and Offer for Sale Drug Paraphernalia)

The Grand Jury incorporates by reference Paragraphs 1-21 of the Introduction as though fully reasserted and re-alleged herein.

Beginning at least by sometime in 2014, at a date unknown to the grand jury, and continuing thereafter through at least the date of the return of this Indictment, in Smith County, Texas; and in Collin County, Texas; in the Eastern District of Texas; **Saleem Jiwani**, **Adeel Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose Khan**, Defendants herein, did knowingly and intentionally combine, conspire, confederate and agree together with each other and with others known and unknown to the Grand Jury, to commit the following offense against the United States:  sell and offer for sale drug paraphernalia, as that term is defined in 21 U.S.C. §  863(d), contrary to the provisions of 21 U.S.C. § 863(a)(1) and 863(b).

In violation of 21 U.S.C. § 846.

<u>COUNTS 5-12</u>

<u>Violation</u>: 18 U.S.C. § 1957 and 18 U.S.C. § 2
(Engaging in monetary transactions in property
derived from specified unlawful activity and
Aiding and Abetting)

The Grand Jury incorporates by reference Paragraphs 1-21 of the Introduction of

this Indictment as though fully reasserted and re-alleged herein.

On or about the dates set forth below, in the Eastern District of Texas, the

defendants, **Saleem Jiwani**, **Adeel Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose**

**Khan**, aided and abetted by one another, knowingly engaged and attempted to engage in

monetary transactions by, through, and to a financial institution, affecting interstate or

foreign commerce, in criminally derived property of a value greater than $10,000, that is

the transfer of U.S. currency, funds, or monetary instruments, such property having been

derived from a specified unlawful activity, namely the conspiracies for the sale and

distribution of Schedule I controlled substances and controlled substance analogues,

violations of 21 U.S.C. § 846, 841, and 813.

With respect to Counts 5-12 set forth below, one or more defendants issued checks

drawn on the bank account identified to make payments as identified below.

**Count 5**
On May 19, 2014, a check in the amount of $14,195.00 was written from JP Morgan
Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "personal
- Ashes."

**Count 6**
On June 19, 2014, a check in the amount of $19,172.50 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "personal."

**Count 7**
On August 8, 2014, a check in the amount of $13,865.00 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS.

**Count 8**
On September 8, 2014, a check in the amount of $12,190.00 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "personal - Ashes."

**Count 9**
On September 8, 2014, a check in the amount of $10,480.00 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "personal - Ashes."

**Count 10**
On September 26, 2014, a check in the amount of $10,795.00 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "Ashes."

**Count 11**
On December 6, 2014, a check in the amount of $10,135.00 was written from JP Morgan Chase Acct. # XXXXX7739 in the name of "SNK Vapor Inc." to the SOS, for "inventory."

**Count 12**
On June 12, 2015, a check in the amount of $19,500.00 was written from Wells Fargo Acct. # XXXXX4279 in the name of "SNK Vapor Inc." to the SOS, for "Ashes."

All in violation of 18 U.S.C. § 1957 and 18 U.S.C. § 2.

<u>COUNT 13</u>

> Violation: 21 U.S.C. § 856 and 18 U.S.C. § 2
> (Maintaining a Place for the Distribution of a
> Controlled Substance or Controlled Substance
> Analogue and Aiding and Abetting)

Beginning in or about April, 2013, at a date unknown to the grand jury, and continuing thereafter through at least the date of the return of this Indictment, in Collin County, Texas, in the Eastern District of Texas; **Saleem Jiwani**, **Adeel Khan**, **Nadia Farishta**, **Sharjeel Ali**, and **Nimrose Khan**, Defendants herein, aided and abetted by one another, did knowingly open, lease, rent, use, and maintain the following building and location for the purpose of distributing Schedule I controlled substances and controlled substance analogues for human consumption, to wit: 1428 Avenue K, Plano, Collin County, Texas also known as SNK Vapor/Ashes.

In violation of 21 U.S.C. § 856 and 18 U.S.C. § 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

### Pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461

As the result of committing one or more of the foregoing offenses alleged in this Indictment, Defendants herein, shall forfeit to the United States pursuant to 18 U.S.C. § 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461:

1.	any property constituting, or derived from, and proceeds the Defendants obtained, directly or indirectly, as the result of such violation; and

2.	any of the Defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including, but not limited to the following:

**Cash Proceeds:**

Approximately $746,000 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the foregoing offenses alleged in this Indictment.

**Substitute Assets:**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants -

    (a)	cannot be located upon the exercise of due diligence;
    (b)	has been transferred or sold to, or deposited with a third person;
    (c)	has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of Defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by defendants.

By virtue of the commission of the offenses alleged in this Indictment, any and all interest the Defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Pursuant to 21 U.S.C. § 853, and 28 U.S.C. § 2461.

A TRUE BILL,

Date: 8-3-16

_____
FOREPERSON OF THE GRAND JURY

JOHN M. BALES
UNITED STATES ATTORNEY

_____
MARY ANN COZBY
ASSISTANT U.S. ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 6:16CR |
| | § | |
| SALEEM JAFFER JIWANI (01) | § | |
| a.k.a. "Sam" | § | |
| ADEEL UZ ZAMAN KHAN (02) | § | |
| a.k.a. "Adam" | § | |
| NADIA FARISHTA (03) | § | |
| SHARJEEL JEFF ALI (04) | § | |
| NIMROSE KHAN (05) | § | |

## NOTICE OF PENALTY

### COUNTS 1 and 2

Violation:            21 U.S.C. § 846

Penalty:             Not more than 20 years imprisonment, a fine not to
                         exceed $1,000,000, or both – supervised release of at
                         least 3 years.

Special Assessment:   $100.00

### COUNT 3

Violation:            18 U.S.C. § 371

Penalty:             Not more than 5 years imprisonment, a fine not to
                         exceed $250,000, or both – supervised release of not
                         more than 3 years.

Special Assessment:   $100.00

## COUNT 4

| | |
|---|---|
| Violation: | 21 U.S.C. §§ 846 |
| Penalty: | Not more than 3 years imprisonment, a fine not to exceed $250,000, or both – supervised release of not more than 1 year. |
| Special Assessment: | $100.00 |

## COUNTS 5-12

| | |
|---|---|
| Violation: | 18 U.S.C. § 1957 |
| Penalty: | Not more than 10 years imprisonment, a fine not to exceed $250,000 or twice the value of the property involved in the transaction, whichever is greater, or both – supervised release of not more than 3 years. |
| Special Assessment: | $100.00 |

## COUNT 13

| | |
|---|---|
| Violation: | 21 U.S.C. § 856 |
| Penalty: | Not more than 20 years imprisonment, a fine not to exceed $500,000, or both, supervised release of not more than 3 years. |
| Special Assessment: | $100.00 |